## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| YANETH ROSARIO POUBLANC AYALA | * | |
| MIRALDA | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 11-1170 |
| | * | |
| TIDEWATER, INC. | * | SECTION "L"(2) |

## ORDER & REASONS

Before the Court is Defendants Tidewater, Inc., Tidewater Marine International, Inc., and Tidewater Crewing, Ltd.'s (collectively "Tidewater") Motion to Dismiss Under Doctrine of *Forum Non Conveniens*. (R. Doc. 40). The Court received briefing and heard oral arguments from the parties. It has considered the arguments raised therein, as well as the applicable and relevant facts, and it is now ready to rule. For the following reasons IT IS ORDERED that Tidewater's Motion is GRANTED, dismissing this matter.

## I.     BACKGROUND

This matter arises from personal injuries sustained on a vessel, injuries from which it is alleged eventually resulted in death. On or about June 22, 2012, the M/V ANG TIDE was in Egyptian waters, alongside the production rig, Comet, and engaged in deck cargo operations. Tidewater owns and operates the M/V ANG TIDE. Decedent, Edgardo Poublanc Munoz, was employed by Tidewater as a Master on this vessel. On this date, while in the course and scope of his employment on the vessel, Decedent was allegedly attacked on the bridge of the vessel by Mohamed Fouda, a crew member who was on watch with Decedent. Decedent allegedly sustained injuries to his forehead, cheek bone, lips, and a broken left leg.

-1-

Decedent was subsequently removed from the vessel in Egypt, at Ras Shukheir extension jetty, for police questioning, and the next day he was sent to a military hospital for treatment of his injuries.  Thereafter, Decedent was sent to a private hospital, returned to the police station, and sent to Cairo for further interrogation.  After three days in Cairo, the Decedent was examined by Tidewater's doctors.  Decedent was then flown back to the United States to be with his relatives in the New Orleans, Louisiana-area.  While in Louisiana, Decedent received medical care and pain medication from Family Physicians Centers, Inc., as well as medical clearance to fly, so he could return to Honduras to renew his work visa.

On or about July 17, 2012, while traveling back to Honduras, Decedent died of a pulmonary thrombosis embolism, injury to vital organs, and multiple traumas.  Decedent was survived by the Plaintiffs: his wife, Yaneth Rosario Poublanc Ayala Miralda, and his children, Janeth Shanik Poublanc Ayala, Annie Bessy Poublanc Ayala, Edgardo Lex Poublanc Ayala, and Cathrine Lillieth Poublanc Ayala.

On May 17, 2011, Plaintiffs filed suit in this Court against Tidewater, raising the following causes of action: (1) wrongful death of a seaman under the Jones Act, pursuant to 46 U.S.C. § 30104-5; (2) damages for pain and suffering of a seaman under the Jones Act, pursuant to 46 U.S.C. § 30104-5; (3) unseaworthiness; and (4) liability for conduct of an agent pursuant to Egyptian law, international lex maritime, and Louisiana law.  (R. Doc. 1).

Tidewater responded by filing two motions to dismiss for lack of subject matter jurisdiction (R. Docs. 9, 24), arguing Plaintiffs' U.S. maritime claims are statutorily bared, the Court lacks admiralty jurisdiction because the alleged torts occurred in foreign seas, and no other basis for subject matter jurisdiction exists.  *See id.*  In its Order & Reasons on these motions, the

Court held that subject matter jurisdiction was lacking for Plaintiffs' federal maritime and Jones Act claims pursuant to 46 U.S.C. § 30105, but found subject matter jurisdiction over the non-Jones Act claims, including claims brought under foreign law and Louisiana law for negligence. *See* (R. Doc. 32).

On May 21, 2012, Plaintiffs filed a First Supplemental and Amended Complaint, substituting Tidewater Marine International, Inc. in place of Tidewater Egypt, Inc. *See* (R. Doc. 38).

## II.    PRESENT MOTION

### A.    Tidewater's Motion to Dismiss

Tidewater filed the present Motion to Dismiss, seeking dismissal of the remaining claims on the basis of *forum non conveniens*.  It argues that Egypt is an appropriate alternate forum which can adequately address Plaintiffs' claims, because Tidewater is amenable to suit there and both private and public interest factors favor Egypt as the forum.  With regard to the interest factors, Tidewater notes: most of the witnesses and discovery are located in Egypt; all of the relevant events took place in Egypt; there is no local interest in Louisiana for the claims by the Honduran Plaintiffs against Cayman defendants arising from events in Egypt; and under Louisiana law there is no cause of action.

### B.    Plaintiffs' Response

Plaintiffs filed a Response in opposition to Tidewater's Motion.  (R. Doc. 45).  Plaintiffs first argue that Egypt is an inadequate forum because of its current political instability, particularly its participation in the Arab Spring, its lack of a ratified constitution, and its dissolved parliament.  Additionally, Plaintiffs argue that neither the public nor private interest

factors weigh in favor of dismissal.  In support, Plaintiffs allege: that the sources of proof are located in various fora; given the location of the parties, witnesses, and evidence, Egypt is the least convenient of possible fora; the compulsory process and cost of attendance for witnesses would be an obstacle in any fora; the vessel inspection is likely unattainable; using an Egyptian court would pose serious language problems because none of the parties or attorneys speak Arabic; the trial is a bench trial; Egypt is the farthest and most costly forum; and Tidewater, Inc. is a local corporation.  Alternatively, Plaintiffs argue that England is the proper forum because the Tidewater Working Agreement, signed by both the Decedent and Tidewater, selects the High Court of Justice in London, England as the forum.

### C.      Tidewater's Reply

Tidewater filed a Reply in further support of its Motion.  (R. Doc. 46-2).  Tidewater challenges Plaintiffs' allegation that the Egyptian courts have been harmed by the current political situation in the country, by submitting correspondence from an Egyptian attorney who states that the Egyptian court system is operating and accepting new cases in spite of the current political situation.  Tidewater then reiterates its previous arguments on the *forum non conveniens* interest factors.  Finally, Tidewater argues that the contract between Decedent and Tidewater was only in effect for 112 days, and because the events giving rise to the present suit happened after this time period, the forum selection clause in the agreement is not applicable.

## III.    LAW & ANALYSIS

### A.      *Forum Non Conveniens*

"A federal court has discretion to dismiss a case on the ground of *forum non conveniens* 'when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would

establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007)(quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)). "Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Id*. (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996)). "A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing plaintiff's chosen forum. When the plaintiff's choice is not its home forum, however, the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" *Id*. (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). "A defendant seeking to have a case dismissed under the doctrine of *forum non conveniens* must demonstrate '(1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favors dismissal.'" *Adams v. Merck & Co. Inc*., 353 F. App'x 960, 962 (5th Cir. 2009)(quoting *Vasquez v. Bridgestone/Firestone, Inc*., 325 F.3d 665, 671 (5th Cir. 2003)). The Court will now address each of these requirements in turn.

    **B.**    **Alternative Forum**

    With regard to the alternative forum requirement, "[a]vailability and adequacy are two separate inquiries. 'A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum.' Meanwhile, 'a foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same

benefits as they might receive in an American court.'"  *See Adams,* 353 F. App'x at 962 (internal citations omitted).

        *1.     Availability*

      Tidewater alleges that Tidewater Marine International, Inc. d/b/a Tidewater Marine Egypt is amenable to service of process in Egypt; Tidewater Crewing, Ltd. will submit to the jurisdiction of the Egyptian courts; and Tidewater, Inc., although it may not be amenable to suit in Egypt, has no direct exposure because it merely a holding company.  Plaintiffs do not appear to dispute that Egypt is an "available" forum since the Tidewater defendants concede they are, for the most part, amenable to service of process in Egypt.  *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 728 (5th Cir. 1990)(quoting *Syndicate 420 at Lloyd's London v. Early Am. Ins.*, 796 F.2d 821, 820 (5th Cir. 1986)("'The defendant's submission to the jurisdiction of an alternative forum renders that forum available for purposes of *forum non conveniens* analysis.'").  Thus, the Court finds Egypt is an available forum.  The dispute under this first *forum non conveniens* requirement, therefore, turns on whether Egypt is an "adequate" forum.

        *2.     Adequacy*

      Tidewater argues that Egypt has been determined to be an adequate forum in the *forum non conveniens* context.  Plaintiffs challenge Egypt as an adequate forum on the basis of the country's current state of political unrest which poses unreasonable delay of litigation and danger to the parties, litigants, and counsel.

      The current state of political unrest in Egypt warrants consideration in the *forum non conveniens* adequacy analysis.  Tidewater cites several cases which have found Egypt to be an adequate forum in the *forum non conveniens* context, but all of these cases predate the current

political situation in the country.  *See* (R. Doc. 40-1, p.3)(citing cases dating from 1998 to 2009), *compare* Egypt News-Revolution and Aftermath, The New York Times, http://topics.nytimes.com/top/news/international/countriesandterritories/egypt/index.html (last updated July 15, 2012)(reporting that Egyptian revolution occurred in February 2011 and political unrest continues today).

Plaintiffs cite in support of their position that Egypt is an inadequate forum, *Sablic v. Armada Shipping APS*, 973 F.Supp. 745 (S.D. Tex. 1997).  *Sablic* involved injuries on a vessel, and the events giving rise to the litigation, as well as the parties, were associated with a variety of different foreign countries.  *See id.*  The court found Croatia to be an inadequate forum in the *forum non conveniens* context, reasoning,

> In the first instance, the Court finds that Croatia, while it may be an available forum, is not an adequate forum in which Plaintiff may present his case.  The Court bases this finding in large part on the political and military instability of the region.  Croatia is a war-torn country that, while making great strides towards recovery, is simply too unstable for this Court to find it to be an adequate forum for Plaintiff's suit.  While it is possible for Plaintiff's case to be heard in the Croatian courts, there is likely a backlog of cases that could present a significant dely in the resolution of Plaintiff's case.  The Court finds that the possibility of a lengthy delay may be considered in this analysis because justice delayed is often justice denied.  Therefore, the Court finds that Croatia is not an adequate alternative forum.  *Id*. at 748.

It is unclear what specific evidence the *Sablic* court relied upon in reaching this conclusion, but several federal appellate courts have uniformly concluded that the political unrest of the alternative forum does not *per se* render this forum inadequate in the *forum non conveniens* context, absent some showing that this unrest negatively affects the judicial system of the country or the litigation at issue.  *See Paolicelli v. Ford Motor Co.*, 289 F. App'x 387, 391 (11th Cir. 2008)("[Plaintiff] alleges that the political instability in Columbia poses safety risks for the parties, but absent evidence the political unrest has affected the Columbian judicial system or

would affect litigation of this case, this fact is not sufficient to outweigh the other factors that

weigh in favor of dismissal."); *Rustal Trading US, Inc. v. Makki*, 17 F. App'x 331, 335 (6th Cir.

2001)("Nor will political unrest in a foreign jurisdiction render the forum inadequate absent

some showing that the unrest has had an adverse effect on the judicial system there.");

*Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220, 1228 (3d Cir. 1995)(relying on expert

testimony to determine whether delay in Indian system demonstrated inadequate forum);

*Transunion Corp. v. PepsiCo., Inc*., 811 F.2d 127, (2d Cir. 1987)(finding as a public interest

factor favoring dismissal under *forum non conveniens* that no showing was made that the

political unrest in the Philippines had an adverse effect upon the judicial system there).  The

Court follows this reasoning and looks to the evidence before it to determine whether the

political unrest in Egypt renders it an inadequate forum.

It is undisputed that Egypt is in the wake of a political revolution and in a state of

political strife and unrest.  *See* Egypt News-Revolution and Aftermath, The New York Times,

http://topics.nytimes.com/top/news/international/countriesandterritories/egypt/index.html (last

updated July 15, 2012).  Further, the U.S. Department of State has in place a travel alert for U.S.

citizens traveling to Egypt.  *See* Travel Alert, Embassy of the United States, Cairo, Egypt,

http://egypt.usembassy.gov/ta032812.html (last updated March 29, 2012).  While these situations

raise concerns about litigating in Egypt, consistent with the applicable law, in order for Plaintiffs

to prove Egypt is an inadequate forum they must put forth evidence that Egypt's political unrest

and strife has or will affect the judicial system and/or the present litigation.  Because Plaintiffs

have failed to do so, the Court finds that Egypt is an adequate alternative forum.  This conclusion

is further supported by the correspondence submitted by Tidewater from an Egyptian attorney

who states that the current political situation in Egypt has not affected the Egyptian judicial system, which is operating and accepting new cases.  *See* (R. Doc. 46-3).  Because the Court finds Egypt is both an available and adequate forum, it will now address the interest factors as required by the second prong of the *forum non conveniens* inquiry.

## C.    Interest Factors

Under the second half of the *forum non conveniens* analysis, the Court is to consider several factors pertaining to the private interest of the litigants and the public interest.  *See Am. Dredging*, 510 U.S. at 448.  "This list of considerations to be balanced is by no means exhaustive, and some factors may not be relevant in the context of a particular case." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528-29 (1988).  The private interest factors include: (1) relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining attendance of willing witnesses, (3) possibility of view of premises, if view would be appropriate to the action, (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See Am. Dredging*, 510 U.S. at 448 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  The public interest factors include: (1) administrative difficulties for the court flowing from docket congestion, (2) the local interest in having localized controversies decided at home, (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action, (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.  *See id.; In re Air Crash Disaster Near New Orleans, La. on July 9, 1982,* 821 F.2d 1147, 1162-63 (5th Cir. 1987), *vacated on other grounds,* 490 U.S. 1032 (1989).  The Court will now address the parties'

arguments under these factors, followed by its reasoning and conclusion for each.

        *1.     Private Interest Factors*

           a.     <u>Relative ease of access to sources of proof</u>

Tidewater argues that this factor favors dismissal because most of the witnesses, particularly the alleged assailant, the treating physicians, and the police officials, reside in Egypt, and most of the discovery is located in Egypt. It claims that additional discovery may be necessary in Honduras where the Plaintiffs reside and the Cayman Islands where two of the defendants are located. It concedes that the Louisiana physician may need to be involved in discovery. In response, Plaintiffs argue that the sources of proof are located in and spread across various fora, including Honduras, Louisiana, the Cayman Islands, and Egypt, and because Egypt is the least convenient of these fora, it is not a proper alternative forum. The Court finds that the sources of proof are concentrated in Egypt, with the rest located in several fora, including Honduras, the Cayman Islands, and Louisiana. Thus, because the bulk of the evidence is in Egypt, this factor leans towards dismissal of the case.

           b.     <u>Availability of compulsory process for attendance of unwilling witnesses</u>

Tidewater argues that because all of the primary witnesses live and/or work in Egypt, with Plaintiffs residing in Honduras, compulsory attendance from unwilling witnesses will only be available in Egypt and/or Honduras. In response, Plaintiffs argue that because compulsory process is an obstacle in both Louisiana and Egypt, this factor does not favor dismissal under *forum non conveniens*.

A subpoena may be served "at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition,

hearing, trial, production, or inspection." Fed. R. Civ. P. 45(b)(2).  The Louisiana physician appears to be the only witness subject to the subpoena power of this Court.  Assuming the subpoena law is similar in Egypt, the alleged assailant, treating physicians, and police officers in Egypt would be subject to the subpoena power of Egyptian courts.  This leaves possible witnesses in Honduras who would not be subject to compulsory process in either country.  The Court finds based on the foregoing, that this factor leans in favor of Tidewater's position because more witnesses are located in Egypt.

c.      Cost of obtaining attendance of willing witnesses

Tidewater argues that the cost of attendance for willing witnesses will be significantly higher in the U.S. forum because most witnesses are located abroad.  In response, Plaintiffs contend that the cost of travel in either fora, U.S. or Egypt, imposes high costs, but that traveling from the Cayman Islands and Honduras to New Orleans costs less than traveling to Egypt from these locations.  Assuming all witnesses are willing to travel to the forum for the litigation, the Court finds that because there are more witnesses in Egypt than in the United States, less international travel and hence lower costs, will be involved with an Egyptian forum.  There may be a few witnesses in Honduras, and while travel to New Orleans would be closer for these witnesses, for either a U.S. or Egyptian forum, the Honduran witnesses will have to travel internationally.  Thus, this factor too weighs in favor of Tidewater's argument.

d.      Possibility of view of premises, if view would be appropriate to the action

Tidewater argues that because the vessel is located in Egypt, it will have to be viewed there.  In response, Plaintiffs argue that because of the ongoing revolution in Egypt, a vessel inspection there would be problematic.  The Court finds that it is possible that an inspection of

the vessel will be necessary and because the vessel is located in Egypt, without knowing whether or not Egypt's political problems will impede the inspection, this factor favors Tidewater's argument.

e.    Other practical problems that make trial of a case easy,
        expeditious, and inexpensive

Tidewater argues that because the Plaintiffs live in Honduras, whether the forum is the United States or Egypt, they will have to travel to a foreign country for the litigation, and because Egypt contains the most witnesses and discovery it is the most expeditious and inexpensive forum. In response, Plaintiffs argue the U.S. forum is favored because Egypt is in the midst of revolution, the last doctor to see the decedent before his death is located in Louisiana, and Tidewater, Inc. is located in the United States. The Court finds practical problems plague all possible fora, but particularly the present forum where the least amount of evidence and parties are located.

2.    *Public Interest Factors*

a.    Administrative difficulties for the court flowing from docket
        congestion

Tidewater argues that the administrative problems of presenting evidence and securing the presence of witnesses, most of which are located in Egypt, would be immense or impossible if the litigation proceeds in the United States. In response, Plaintiffs argue that the complications involved with translating trial testimony and documents in Arabic to English in an Egyptian court favors the U.S. forum. Neither of the parties raises an argument pertaining to the Court's docket congestion, which is the focus of this inquiry. However, each side does raise legitimate obstacles to litigating the case in either forum: (1) getting evidence and witnesses in Egypt to the

United States, and (2) translating Arabic to English in the Egyptian court.  The Court finds that each of these concerns  cancel one-another out.

> b.   Local interest in having localized controversies decided at home

Tidewater argues that the United States has no local interest in the present matter because it is a dispute between foreign litigants arising out of events that occurred in a foreign country. In response, Plaintiffs allege the following facts create a local interest in the case: Tidewater, Inc. is a local corporation with global subsidiaries; Tidewater's employment practices and standard of care are at issue in the litigation; and the Decedent was treated in Louisiana by a Louisiana physician.  The Court finds that while there is a minimal level of local interest in the case, most of the interest is outside of the State, pertaining instead to Honduras, the Cayman Islands, and Egypt.  Thus, this factor favors Tidewater's argument.

> c.   Interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action

Tidewater argues that this Court will be faced with the problem of interpreting and applying Egyptian law.  While the Court has not yet determined the applicable law in this case, Egypt certainly has a role and interest in this case, and if the Court is required to interpret and apply Egyptian law it will not be an easy task, but at the same time, it is not uncommon or insurmountable for a U.S. court to interpret and apply foreign law in appropriate cases. Assuming the Court would have to apply Egyptian law, this factor weighs in slight favor of Tidewater's argument.

> d.   Avoidance of unnecessary problems in conflict of laws or in the application of foreign law

Tidewater argues that this Court will be faced with the problem of interpreting and

applying Egyptian law.  The Court discussed this argument in the immediately preceding section and concludes again that this favor weighs in slight favor of Tidewater's argument.

> e.       Unfairness of burdening citizens in an unrelated forum with jury duty

Tidewater argues that local jurors in New Orleans should not be required to decide a case between Honduran plaintiffs and Cayman defendants arising from an incident that occurred in Egypt.  In response, Plaintiffs argue that because the trial is a bench trial, this factor holds no weight in the analysis.  The Court agrees with Plaintiffs, that because this is a bench trial, this factor favors retaining the case in this forum.

> 3.       Conclusion

Based upon the foregoing analysis, the Court finds that the interest factors, when considered as a whole, weigh in favor of dismissing the case on *forum non conveniens* grounds. Thus, both factors of the *forum non conveniens* inquiry favor Tidewater's argument for dismissal of the claims against it.  Out of an abundance of caution, however, the Court will address two tangential arguments raised by the parties in their briefing.

**D.    Louisiana Law**

Tidewater argues that under Louisiana law, the Plaintiffs have no cause of action consistent with *Soares v. Tidewater, Inc*., 2004-1154 (La. App. 4 Cir. 1/12/05); 895 So. 2d 568, and thus, dismissal of the case is also appropriate on this basis.  It appears that Tidewater is raising a Federal Rule of Civil Procedure 12(b)(6) argument for failure to state a claim.  If Tidewater seeks to do so, it should raise the issue in a separate motion so it can been fully and properly briefed and heard by the Court.  Further, the issues raised by the *Soares* case were previously addressed by this Court with regard to Tidewater's earlier motions to dismiss for lack

of subject matter jurisdiction.  Thus, the Court declines to re-address these issues for purposes of the present Motion.

### E.        Choice-of-Law Provision

Plaintiffs, in their conclusion, argue that if the present Court is not a convenient forum, the proper forum is the High Court of Justice in London, England, because the Tidewater Working Agreement, signed both by Decedent and Tidewater, selects this court as the proper venue for litigation.  Tidewater argues that the Working Agreement was not in effect during the time of the incident, rendering the forum selection clause in this Agreement without effect.

"'Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases.'" *PHI, Inc. v. Rolls-Royce Corp.*, 2010 WL 883794, at * (W.D. La. Mar. 9, 2010)(quoting *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 399 (5th Cir. 2008)).  Forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *Launey v. Carnival Corp.*, 1997 WL 426095, at *1 (E.D. La. July 25, 1997)(quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).  Because Tidewater opposes the forum selection clause, the Court is to consider a series of factors for determining this "unreasonableness."  *See Haynesworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997)(citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991)).

> Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chose law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.  *Id.*

"The party resisting enforcement on these grounds bears a 'heavy burden of proof.'" *Id.* (quoting *M/S Bremen*, 407 U.S. at 17).

The Working Agreement entered into by Tidewater and the Decedent contemplates a Work Schedule only from May 2009 to 112 days thereafter, ending well before the incident at issue which took place on June 22, 2012. *See* (R. Doc. 45-4). The Court finds, accordingly, that the application of the forum selection clause in a contract which had lapsed at the time of the incident at issue would be unreasonable under the circumstances and thus unenforceable based upon the foregoing law.

## IV.   CONCLUSION

For the foregoing reasons IT IS ORDERED that Tidewater's Motion to Dismiss Under Doctrine of Forum Non Conveniens (R. Doc. 40) is GRANTED, dismissing the present matter, providing that:

(I) Tidewater submits to service of process and jurisdiction in the appropriate Egyptian forum;

(ii) Plaintiffs initiate appropriate proceedings within 120 days of this Order & Reasons;

(iii) Tidewater formally waives any statute of limitations defense that has matured since the commencement of this case in the U.S. District Court for the Eastern District of Louisiana; and

(iv) Tidewater agrees to satisfy any final judgment rendered by the Egyptian forum administratively closed.

IT IS FURTHER ORDERED that the case be administratively CLOSED.

New Orleans, Louisiana this 23rd day of August 2012.

_____
U.S. District Judge